# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 07 2016, 10:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joshua D. Hershberger
Hershberger Law Office
Madison, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:

P.S. (Minor Child)
and

C.S. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

April 7, 2016

Court of Appeals Case No. 72A01-1510-JT-1610

Appeal from the Scott Circuit Court

The Honorable Roger L. Duvall, Judge

Trial Court Cause No. 72C01-1501-JT-4

**Bailey, Judge.**

# Case Summary

C.S. ("Mother") appeals the trial court's order on the Department of Child Services' ("DCS") petition, which order terminated her parental rights as to P.S. ("Child").[1] We affirm.

# Issues

Mother raises several issues for our review, which we restate as a single, consolidated issue: whether the trial court's order was supported by clear and convincing evidence.

# Facts and Procedural History

Child was born to Mother and Father on March 18, 2014. At birth, Child was drug exposed. As a result, DCS detained Child on March 19, 2014. Mother had been involved with DCS services as the result of a Child in Need of Services ("CHINS") action with respect to Mother's other child, R.P., who was at the time of Child's birth still the subject of a CHINS proceeding.

On May 20, 2014, Child was adjudicated a CHINS.

---

[1] D.G. ("Father") was a party below, and his parental rights were also terminated. He does not appeal.

[5]     During the pendency of the CHINS proceeding, DCS offered Mother substance abuse treatment, thrice-weekly supervised visitation with Child, and other therapeutic services. On multiple occasions, treatment providers recommended to Mother that she participate in inpatient substance abuse treatment for opiates. Though Mother expressed recognition that she had a substance abuse problem, she declined or avoided offers of inpatient treatment.

[6]     Mother participated in supervised visits with Child during April and May 2014. While Mother attended some substance abuse counseling, she was screened for drug use on eight occasions; on six of these, Mother tested positive for use of a number of different drugs, including oxycodone, oxymorphone, hydrocodone, Xanax, marijuana, and heroin. After May 2014, however, Mother had no contact of any type with any service providers, and ceased participating in visitation with Child. Mother's attendance at hearings was also sporadic.

[7]     In October 2014, Mother was arrested and charged with Fraud and Theft. Also in October 2014, Mother's parental rights as to R.P. were terminated.

[8]     On January 6, 2015, DCS filed a petition to terminate Mother's parental rights.

[9]     In April 2015, during the pendency of proceedings on the petition, Mother began inpatient substance abuse treatment at The Healing Place, an inpatient treatment center in Kentucky.

[10]    A fact-finding hearing on the petition was conducted on May 28, 2015. Mother was represented by counsel but failed personally to appear at the hearing. After

hearing testimony from service providers and Father, the trial court continued the hearing to arrange for Mother's transportation from The Healing Place to provide testimony. The fact-finding hearing was continued to and concluded on June 25, 2015.

On September 3, 2015, the court entered its order terminating Mother's parental rights. This appeal ensued.

# Discussion and Decision

Mother challenges the termination of her parental rights as to Child on a number of bases. Our standard of review is highly deferential in such cases. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997).

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

Indiana Code section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) that one (1) of the following is true:

(i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.
(ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
(iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
(iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

[15]    If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship.  I.C. § 31-35-2-8(a).  A trial court must judge a parent's fitness to care for his or her child at the time of the

termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.*

[16] Here, Mother challenges the termination decree under Subsections 31-35-2-4(b)(2)(B) and (C).

[17] Subsection 31-35-2-4(b)(2)(B) is written in the disjunctive, so that the court need only have found one of the requirements of the subsection to have been established by clear and convincing evidence. *In re L.S.*, 717 N.E.2d at 209. Here, the trial court concluded that both Subsections 31-35-2-4(b)(2)(B)(i) and (ii) were met.

[18] The evidence that favors the trial court's decision discloses that Mother had a long-standing substance abuse problem and that, as a result, Child was born drug-exposed. Child remained in the hospital for an extended period of time after birth, and then was placed in foster care. Mother ceased taking advantage of supervised visits with child in May 2014, and as of the termination hearing had not seen Child for more than twelve months. Mother's substance abuse problems were persistent and ongoing. While Mother voluntarily entered into inpatient drug treatment, a fact noted by the trial court, the course of treatment was likely to last at least six and possibly as many as thirteen months, and Child could not reside with Mother until the end of that course of treatment. Further, criminal charges were pending against Mother at the time of the fact-finding

hearing. In the absence of stable housing and in the face of ongoing criminal proceedings, with only a small portion of substance abuse treatment completed, and with Child having been removed from Mother's care for all of her life, there was clear and convincing evidence that continuing the parent-child relationship posed a threat to Child's well-being. And while Mother's efforts at rehabilitation are admirable, we cannot say the trial court's decision was clearly erroneous.

[19] With respect to Child's best interests, we note the following evidence favoring the trial court's decision. Child had been removed from Mother's care at birth, and Mother had not seen Child for more than twelve months at the time of the fact-finding hearing. Child was in Kentucky with a relative, was thriving, and was in daily contact with R.P., who had also been removed from Mother's care. Child had bonded to her caregivers and to her older sister, and Child's foster family expressed interest in adopting her. Mother's housing, substance use, and criminal charges were all unresolved. Accordingly, we conclude that there was clear and convincing evidence to support the trial court's finding that termination of Mother's parental rights was in Child's best interests.

# Conclusion

[20] There was clear and convincing evidence to support the trial court's finding that a continuation of the parent-child relationship posed a threat to Child's wellbeing, and that termination of the parent-child relationship was in Child's best interests.

Affirmed.

Bradford, J., and Altice, J., concur.